# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### December 4, 2007 Session

## BOBBY JOE LESTER V. STATE OF TENNESSEE

### Direct Appeal from the Criminal Court for Shelby County
### No. 02-02080     James C. Beasley Jr., Judge

_____

### No. W2006-02042-CCA-R3-PC  - Filed April 7, 2008

_____

A Shelby County Jury convicted the Petitioner, Bobby Joe Lester, of attempted first degree murder, especially aggravated kidnapping, two counts of aggravated assault, and coercion of a witness.  The trial court merged the aggravated assault conviction with the conviction for attempted first degree murder and sentenced the Petitioner to an effective eighty-five year sentence.  The conviction and sentences were affirmed by this Court on direct appeal.  *State v. Bobby Joe Lester*, No. W2004-00842-CCA-R3-CD, 2005 WL 1798763 (Tenn. Crim. App., at Jackson, July 28, 2005).  The Petitioner filed a petition for post-conviction relief, amended by appointed counsel, alleging he did not receive the effective assistance of counsel.  The post-conviction court dismissed the petition after a hearing.  On appeal, the Petitioner contends that he is entitled to post-conviction relief because his trial counsel was ineffective by: (1) failing to request the jury be instructed on facilitation; (2) failing to adequately argue in the motion for new trial that his convictions for especially aggravated kidnapping and attempted first degree murder violate due process, citing *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991); and (3) failing to object to testimony from the victim about a prior rape.  The Petitioner also contends that his appellate counsel was ineffective for failing to argue the *Anthony* issue on appeal.  After reviewing the issues and applicable authorities, we affirm the post-conviction court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the Appellant, Bobby Joe Lester.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; David Pritchard, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

After being convicted at trial, the Petitioner appealed his convictions and sentences to this Court. In that direct appeal, we described the following facts:

Billie Strong, the victim, testified that she was beaten and raped on April 21, 2001, by Ervon Blair and Tommy Holmes. After she was discovered, she informed the police of the identity of her attackers, resulting in criminal charges against the two men. The victim had previously met Blair and Holmes while visiting her friend Charles Davis at a rooming house on Foster Street in Memphis, where he lived with Blair and Holmes. She also met the [Petitioner] at the rooming house, as he was a friend of Blair and Holmes.

The victim testified that around 11:30 a.m. on June 5, 2001, as she walked to Miller's Grocery Store to use the pay phone, a white transfer truck without the trailer, bearing the markings M. S. Carriers, pulled over on the grass beside her home. The victim had seen the truck circle her home several times earlier that morning as she sat on her front porch. The driver, a man who introduced himself as Jody, called her over and offered to give her a ride. The victim entered the truck, locked the door, and fastened her seatbelt as instructed. At this point, the [Petitioner], whom the victim recognized as "Joe," pulled back the sleeper curtain located behind her and hit her in the throat with a baseball bat. Holmes, who was also secreted in the truck's cab, then beat her with a hammer and asked her why she had pressed charges against him. He told her to call Sergeant Colbert, the investigating officer, and drop the charges. The victim also testified that after she was beaten, the [Petitioner] tried to wrap her in plastic and "snap" her neck. The victim also stated that the [Petitioner] and Jody raped her and that her assailants forced her to smoke crack cocaine in the truck. While the victim related that she had not used cocaine since her rape in April of that year, State's witness Charles Davis testified that the victim had smoked crack cocaine throughout their entire fifteen-to-twenty-year close friendship. The last thing the victim remembered was lying on the side of the road and somehow rolling out of the truck's path as the truck tried to run her over.

A motorist driving home from work found the victim, undressed and bleeding, in front of an abandoned house on Frayser Boulevard, crawling toward the sidewalk and crying for help. The motorist stopped his car and called 9-1-1 on his cell phone. Officer Keith Seibert of the Memphis Police Department responded to the scene and discovered the victim lying half on the grass and half on the street in front of 2801 Frayser Boulevard. The victim was coming in and out of consciousness.

The victim suffered life threatening injuries as a result of the beating and

entered the hospital in extremely critical condition. At trial, the victim testified that as a result of the beating of June 5, 2001, her jaw was broken and her teeth were knocked out by the roots. Doctors removed her spleen and inserted three iron plates in her head and a rod in her elbow. Additionally, her first, second, and third vertebras were compacted forcing her to sleep in a sitting position to prevent swelling. Her arm was also partially paralyzed.

Sergeant L. W. Colburn, who was with the Memphis Police Department's Sex Crimes Bureau at the time of the investigation, was involved in the investigation of the victim's cases. He testified that while hospitalized, the victim indicated that Holmes and a man named "Joe" had beaten her on June 5, 2001. He presented the victim with a photo spread, and she identified Bobby Joe Lester as the perpetrator and wrote, "I'll never forget the look he gave me when he first him me with the bat."

*State v. Bobby Joe Lester*, No. W2004-00842-CCA-R3-CD, 2005 WL 1798763, at *1-2 (Tenn. Crim. App., at Jackson, July 28, 2005).

The Petitioner filed a timely petition for post-conviction relief, amended by appointed counsel, alleging that he had not received the effective assistance of counsel. At the hearing on the petition, the Petitioner's trial counsel ("Counsel") testified she represented the Petitioner at his trial and for his direct appeal. Counsel said she did not request a jury charge on facilitation because, according to the facts of the case, it was alleged that the Petitioner was the primary participant. Specifically, the State alleged that the Petitioner made initial contact with the victim by hitting her with a baseball bat at which time the other man began to beat her with a hammer. Given these facts, Counsel did not think a facilitation instruction was warranted.

Counsel agreed that there was some testimony from the victim about a rape, not involving the Petitioner, that occurred in April of 2001. She said the State alleged, in its case against the Petitioner, that the attack for which the Petitioner was on trial was a retaliation against the victim for filing charges against her attackers. Counsel explained that some of the testimony about the rape was graphic, but she did not object because her theory was that, because he was not involved in the rape, the Petitioner had no motive to attack the victim to keep her from testifying at the rape trial. Counsel said she originally thought no mention should be made of the rape, but she changed her mind when she learned that the State intended to call as a witness Ervon Blair, who had been involved in the rape. She then thought that the rape evidence should be admitted because it was "the ultimate impeachment of [Blair] that he would come to court to give testimony against [the Petitioner] when he's the one who's alleged to have committed the rape that's the impetus for [the] assault."

Counsel testified that, after the trial, she filed a motion for a new trial on the Petitioner's behalf. In that motion, she contended that, because the victim entered the truck voluntarily, the especially aggravated kidnapping was incidental to the attempted first degree murder. Counsel said she made a due process argument in the motion but agreed the motion did not use the words

due process or cite to *State v. Anthony*, which is accepted as the controlling case on this issue. She explained that she used the word "incidental," which was the same wording used by the *Anthony* Court.

On cross-examination, Counsel testified she did not request a facilitation instruction in part because the Petitioner's theory of the case was that he had "only seen her around briefly; he did not know her [and] he was not involved in this matter in any way." The Petitioner testified to this effect at trial, denying all involvement. Addressing the rape testimony, Counsel said she wanted to impeach Blair with this testimony because Blair would have to admit his role in the 2001 rape when testifying, which could cause the jury to find him less believable. Counsel said that she filed a motion for judgment of acquittal at the close of the State's proof and again at the close of her proof, and the trial court denied both motions. Upon questioning from the Court, Counsel agreed that the trial judge charged the jury about criminal responsibility for the conduct of another.

The post-conviction court denied the Petitioner relief, and it is from that judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the trial court erred when it dismissed his petition because Counsel was ineffective by: (1) failing to request the jury be instructed on facilitation; (2) failing to adequately argue in the motion for new trial that his convictions for especially aggravated kidnapping and attempted first degree murder violate due process, citing *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991); and (3) failing to object to testimony from the victim about a prior rape. The Petitioner also contends that his appellate counsel was ineffective for failing to argue the *Anthony* issue on appeal.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth

Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688 (1984)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland,* 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a petitioner in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *Id*.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

## A. Facilitation Instruction

The Petitioner first contends that Counsel was ineffective for failing to request a jury instruction on facilitation of especially aggravated kidnapping and facilitation of attempted first degree murder. At trial, the trial court instructed the jury on other lesser-included offenses of the charged offenses, including attempted second degree murder, attempted voluntary manslaughter, aggravated kidnapping, and kidnapping. Additionally, the trial court instructed the jury on criminal responsibility for the conduct of another. The post-conviction court found that Counsel was not ineffective for not requesting the facilitation instructions, stating:

[T]he overriding thing that strikes me is the nature of the crime, the testimony with regard to [the Petitioner's] involvement in the crime of the kidnapping issue and the attempted murder.

It is obvious at least to me in a review of these things that I have looked at and mentioned that [the Petitioner] was a key player, and I think that's the question for a jury to determine and a trial court to determine in charging lesser-included offenses in a light . . . most favorable to [the] lesser-included offense . . . .

. . . .

And this is another one of those fact specific cases in my mind that there's no question based upon the testimony and my review of the testimony that [the Petitioner] took a very active role in the attempted murder of this lady, and obviously the kidnapping, such that I do not see how any reasonable jury could look at the facts of this case, not only testimony of the victim as to the beating inflicted by [the Petitioner], the attempt to conceal and wrap her body, the attempt to break her neck, the rape, all of that would just completely fly in the face of somebody [that] did . . . not have the intent to commit the offense of murder in the first-degree . . . .

Whether he had a motive to do it or not, based upon that he wasn't accused in the first rape had nothing to do with his intent to commit the murder. Those two are two separate things. The jury might find that he didn't have a motive but [that] doesn't change the fact that he had an intent to kill her and that's

the criteria. There's no law that says you have to prove motive.

. . . .

When you couple the charge of premeditation when you couple that with gathering the weapons to be used, gathering the plastic wrap to wrap the body in for purposes of disposing of the body, the subterfuge involved in getting her inside the truck and the hiding the truck knowing that they were going to get her in the truck, and they're hiding behind a curtain ready to pounce on her and the subsequent leaving her out in a field and attempting to run over her body in a truck, there's no question in my mind that a reasonable jury could not have found that this was a facilitation of an act that [the Petitioner] had no intent to be involved in the actual attempted murder or murder.

. . . .

And in this Court's opinion based upon what it has read in the transcripts of this trial and the other things that I've looked at in the trial there's no question in my mind that facilitation should not have been charged in this case [and] that if a jury were to have returned a verdict of facilitation, I don't know that the proof would have allowed it to stand quite frankly.

I think the proof was overwhelming that [the Petitioner] was a principle very much involved principle in this particular case and coupled with the fact that his defense was it wasn't me; I wasn't even there, that even more so heightens the fact there's no basis for a charge of facilitation because the defendant's defense in that case would have to be I was there and participated but I had no intention to be involved in the actual end result.

So if his whole defense was I don't deny that somebody attacked and beat this woman and tried to kill her but it wasn't me. There's no way that there's a basis for a charge of facilitation under all of those facts and so the Court would find that the failure not only of the Court to instruct on the crime of facilitation but on defense counsel to request an instruction on the crime of facilitation is not ineffective on behalf of trial counsel and was not error on behalf of the trial court.

The Petitioner asserts the post-conviction court erred in making this finding, arguing that the following proof at trial was sufficient to support a facilitation instruction: the testimony was unclear about the Petitioner's role in preparing to abduct the victim; the jury was instructed on criminal responsibility for the conduct of another, which, at the time of the Petitioner's trial, necessitated a facilitation instruction; the Petitioner had no motive because he did not participate in the April 2001 rape; and the Petitioner was a follower rather than a leader in the commission of these offenses.

-7-

In trials that occurred before January 1, 2002, it was the trial court's duty to charge juries as to the law of each offenses included in an indictment whether or not a defendant requested such an instruction. *See* T.C.A. § 40-18-110(c) (1997); *State v. Page*, 184 S.W.3d 223, 229 (Tenn. 2006). In *Page*, our Supreme Court noted that, under the 1997 version of section 40-18-110, a defendant was not required to request a lesser-included instruction to assign as error the trial court's failure to give such instruction. *Page*, 184 S.W.2d at 229. Because the trial court had a mandatory duty to instruct the jury regardless of a request to do so from the defendant, this Court has previously concluded that defense counsel was not ineffective for failing to request an instruction on a particular lesser-included offense. *Jerome Sawyer v. State*, No. 2005-01813-CCA-R3-PC, 2007 WL 778828, at *20 (Tenn. Crim. App. at Jackson, Mar. 15, 2007); *Chivous Robinson v. State*, No. E2005-01036-CCA-R3-PC, 2006 WL 1381511, at *6 (Tenn. Crim. App., at Knoxville, May 19, 2006), *perm. app. denied* (Tenn. Oct. 2, 2006); *Jeffery Lee Miller v. State*, No. M2003-02841-CCA-R3-PC, 2005 WL 901130, at *5 (Tenn. Crim. App., at Nashville, Apr. 19, 2005), *perm. app. denied* (Tenn. Oct. 17, 2005); s*ee also Larry Johnson v. State*, W2006-00345-CCA-R3-PC, 2007 WL 2120184, at *10 (Tenn. Crim. App., at Jackson, July 24, 2007), *perm. app. denied* (Tenn. Dec. 26, 2007).

In 2001, Tennessee Code Annotated section 40-18-110 was amended to provide that appellate review of jury instructions on lesser-included offenses is precluded if the issue is not presented in writing to the trial court for determination prior to the trial court's charge to the jury. T.C.A. § 40-18-110(c) (2001). The amendments govern all trials conducted on or after January 1, 2002, and thus were in effect at the time Petitioner's trial was conducted in December, 2003. Id. § 40-18-110, Compiler's Notes. Further, there is an argument to be made that *Wiley v. State*, 183 S.W.3d 317 (Tenn. 2006), stands for the proposition that the trial court's duty to charge lesser-included offenses does not excuse an attorney from voicing an objection when the trial court neglects its duty. *See Johnson*, 2007 WL 2120184, at *10.

Whether the duty lies with the court, with counsel, or with both, the petitioner still bears the burden of proving that a reasonable probability exists that the outcome would have been different had the instruction been given. *See Id*. The issue of lesser-included offenses is controlled by the prevailing law at the time of the trial. *Wiley*, 183 S.W.2d at 328. In the case under submission, the Petitioner cannot prove prejudice, which is required to entitle him to post-conviction relief. It is true that, at the time of the Petitioner's trial, this Court had held, "[V]irtually every time one is charged with a felony by way of criminal responsibility for the conduct of another, facilitation of the felony would be a lesser included offense." *State v. Lewis*, 919 S.W.2d 62, 67 (Tenn. Crim. App. 1995).

The post-conviction court held that the Petitioner did not prove prejudice because the proof at trial was "overwhelming that the Petitioner was a principle very much involved" in this particular case and his defense was that he was not present and did not participate in this crime. Further, the court held there was no proof that, although the Petitioner was at the scene of this crime and participated, he had no intention to be involved in the actual end result. We agree. In *State v. Ely*, 48 S.W.3d 710 (Tenn. 2001), the Tennessee Supreme Court concluded that the trial court did not err when it failed to instruct the jury on facilitation of felony murder. *Id.* at 724. In

that case, the Court noted that the defendant's "defense was that he was not present; therefore, he was either guilty of some degree of homicide or wholly innocent of any wrongdoing." *Id.* The Court then concluded that no reasonable juror could have believed that the defendant therein facilitated his co-defendant in this crime. *Id.* Therefore, no instruction on the lesser-included offense of facilitation was warranted. *Id.*; *see also State v. Joe A. Gallaher*, No. E2001-01876-CCA-R3-CD, 2003 WL 21463017, at *5 (Tenn. Crim. App., at Knoxville, June 25, 2003). We conclude that the facts of this case are similar to the facts in *Ely*. In our view, no reasonable jury could have believed that the Petitioner was not a principle actor in this crime and that he only facilitated the others in attempting to murder the victim. Therefore, the evidence does not preponderate against the post-conviction court's findings that Counsel's performance was not deficient in this regard and that the Petitioner did not prove prejudice.

### B. Failure to Appeal Alleged Due Process Violation

The Petitioner contends that the Counsel was ineffective for failing to include in his motion for new trial, or allege on appeal, that his convictions for especially aggravated kidnapping and attempted first degree murder violated due process protections as articulated in *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991). The Petitioner notes that, in his first direct appeal, this Court addressed whether the evidence was sufficient to sustain the Petitioner's especially aggravated kidnapping conviction because the victim entered the truck willingly, did not attempt to leave the truck, and was not forced to stay in the truck. The Petitioner asserts that, while the dissenting opinion in that direct appeal cites to *Anthony*, the Court never squarely addressed the *Anthony* issue.

The post-conviction court found:

I understand those arguments, . . . and I understand why they're made and in looking at the opinion of the Court of Criminal [A]ppeals it would appear to me that those issues have previously been addressed on the motion for new trial, maybe not directly [in] light of the argument made in the motion for new trial but indirectly in the type and the nature of the argument they are to me interwoven.

And her argument is whether she actually uses the word[s] . . . "*State v. Anthony*," in that line of cases or not it is obvious that she was arguing that the kidnapping in and of itself was a part of the attempted murder and that there were two separate offenses, and I think the Court of Criminal Appeals addressed that issue with regard even under the sufficiency of the evidence argument in that was this in fact a kidnapping at all.

And a majority of the Court of Criminal Appeals felt that it was a kidnapping that she was enticed into this truck under some fraud and then she was maintained there under force after she got inside the truck and that that constituted the crime of kidnapping.

Judge Hayes in his dissenting opinion feels different[ly] and feels that it is an *Anthony* violation that it is part and parcel to the attempt to commit murder in the first-degree. I frankly with all due respect to Judge Hayes don't agree with his analysis of the facts of the case. My analysis of the facts of the case based on what I read is that she was enticed into this truck, and it's obvious from the subterfuge that [the Petitioner] and Mr. Holmes put on in getting her in this truck. . . .

It's not that she got in the truck and then they went and picked up [the Petitioner] and Holmes. [The Petitioner] and Holmes were hiding behind a curtain with the weapons, with the plastic to hide her body. It was their intent to get her into that truck and to kill her and dispose of her body, and they got her into that truck under fraud, under an enticement and knowing what their intention was, and then once she was there, she was detained against her will, and she suffered serious bod[ily] injury as a result thereof. She was moved to another location. Her body was secreted out in a field somewhere and left, and during the course of that they attempted to murder her.

So [in] my opinion both charges could stand and should stand, and I think the majority of the Court of Criminal Appeals felt the same way . . . and I think that in light of the fact that Judge Hayes mentions *State v. Anthony* in his dissent is an indication that both the majority had access to *State v. Anthony*, obviously, they were aware of it.

Obviously, it is something that was discussed by the Court of Criminal Appeals because it's discussed in Judge Hayes' dissenting opinion which means the other side had to look at it had to be aware of it had to be conscious of *Anthony* as a ulterior analysis of the facts of the case, and if the Court of Criminal Appeals felt that it was a violation of *Anthony*, they could have addressed that and ruled on it because it's obvious that they were aware of it and addressed it in their opinion based upon the cite that's given by Judge Hayes of that case.

So I'm of the opinion that that is an issue that has already been adequately covered on appeal and that [Counsel] did in fact argue that issue whether she used the right terminology or not whether she cited the right case. She argued that theory of the law, and the court of Criminal Appeals addressed that theory of the law, and I think it's already found that it is without merit.

The same principles apply in determining the effectiveness of both trial and appellate counsel. *Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner alleging ineffective assistance of appellate counsel must prove both that (1) appellate counsel were objectively unreasonable in failing to raise a particular issue on appeal, and (2) absent counsel's deficient performance, there was a reasonable probability that the petitioner's appeal would have been successful before the highest court. *See e.g., State v. Robbins*, 528 U.S. 259, 285 (2000); *Tony*

*Carruthers v. State*, No. W2006-0036-CCA-R3-PD, 2007 WL 4355481, at *41 (Tenn. Crim. App, at Jackson, Dec. 12, 2007). To show that counsel was deficient for failing to raise an issue on direct appeal, the reviewing court must determine the merits of the issue. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. *Id.* Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. *Id.* When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim. *Id.* at 888.

In *State v. Anthony*, the Tennessee Supreme Court set forth a test to determine whether dual convictions for kidnapping and another felony violate due process. *Anthony*, 817 S.W.2d at 306. Our Supreme Court recognized that certain crimes, such as robbery and rape, necessarily involve some detention or confinement of the victim. *Id.* Under circumstances in which the detention or confinement of the victim is "essentially incidental" to the underlying felony, principles of due process prohibit the imposition of another conviction for kidnapping. *Id.* Thus, in determining whether a defendant's actions in committing the underlying offense will also support a separate conviction for kidnapping, the inquiry is:

> [W]hether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction.

*Id.*

In the case under submission, the Petitioner was convicted of attempted first degree murder, especially aggravated kidnapping, two counts of aggravated assault, and one count of coercion of a witness. Counsel appealed these convictions, contending that the kidnapping was "incidental" to the attempted first degree murder conviction. She conceded at the post-conviction hearing that she did not cite to *State v. Anthony* in her appeal, instead couching her argument in terms that the evidence was insufficient to sustain the kidnapping conviction. Clearly, it is a better practice to cite to all relevant authorities on appeal, and Counsel should have done so. This, however, does not entitle the Petitioner to post-conviction relief because he has not shown that his appeal would have been successful. In the Petitioner's direct appeal, this Court in fact was aware of, and addressed, the *State v. Anthony* issue. In his dissenting opinion in this direct appeal, Judge Hayes disagreed with the majority's finding that the evidence sufficiently supported both an attempted first degree murder conviction and an especially aggravated kidnapping conviction, citing to *Anthony*. *Lester*, 2005 WL 1798763, at *8. The majority found this dissent unpersuasive, rejecting Judge Hayes interpretation of *Anthony*. *Id*. at *4. This Court clearly considered this issue, and the *Anthony* case, in its opinion on the Petitioner's direct appeal. Accordingly, the Petitioner cannot prove that a reasonable probability exists that his appeal would have been successful had Counsel cited to this case. He is,

therefore, not entitled to relief.

### C. Failure to Object to Testimony of Prior Rape of Victim

Finally, the Petitioner contends that Counsel was ineffective for failing to object to testimony about the prior rape of the victim by Holmes and Blair. During the Petitioner's trial, the victim testified that Holmes and Blair had previously raped her on April 21, 2001. Counsel testified at the post-conviction hearing that she did not object to this testimony as a matter of trial strategy. The Petitioner was not involved in this prior rape, and the State alleged the subsequent beating, for which the Petitioner was on trial, was an attempt to kill the victim so she could not testify about the rape. When Counsel learned that Blair would testify against the Petitioner, she decided the testimony about the rape should be admitted so that she could impeach Blair about this rape and his participation in it. The post-conviction court held that Counsel's trial strategy in this regard was reasonable.

As previously stated, counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams*, 599 S.W.2d at 279-80. The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *Id*. We conclude that Counsel's decision not to object to the testimony about the rape was based upon adequate preparation and was one of strategy. We will not second guess that decision with the benefit of hindsight. The Petitioner is not entitled to relief on this issue.

### III. Conclusion

Based on the foregoing reasoning and authority, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE